UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TREMAIN VERNON JONES,

        Plaintiff,                        Case No. 2:15-cv-203

v.                                             Honorable Robert Holmes Bell

DEBORAH E. LOOP, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.        Factual allegations

Plaintiff Tremain Vernon Jones, a state prisoner currently confined at the Alger Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Resident Unit Supervisor Deborah E. Loop, Prison Inspector Kristopher Taskila, Resident Unit Supervisor Thomas L. Perttu, Account Technician M. Meneguzzo, Facility Business Manager Kristine Lacount, Corrections Officer Joe Cayer, Prisoner Accounts Manager Stephanie Klimala, Grievance and Appeals Section Manager Richard P. Russell, the Michigan Department of Corrections, Warden Kathy Olson, and Deputy Warden Michael Yon. During the pertinent time period, Plaintiff was confined at the Ojibway Correctional Facility (OCF).

In his complaint, Plaintiff alleges that on September 29, 2015, Defendant Loop issued notice of intent (NOI) to conduct an administrative hearing on Plaintiff because another prisoner had logged into Plaintiff's JPay account to check his email while Plaintiff was serving sanctions for possession of a weapon. On October 9, 2015, Defendant Perttu upheld the NOI and suspended Plaintiff's JPay privileges for 60 days. During the hearing, Defendant Perttu told Plaintiff that while he was at OCF, he would learn to keep his mouth shut about staff. Plaintiff stated that he would be filing a grievance and Defendant Perttu responded that no one cared.

According to Plaintiff's complaint, an administrative hearing officer ordered him to pay restitution of $3,405.00 to individuals who had sent him money to assist their loved ones with legal pleadings. Plaintiff alleges that Defendant Loop stated she knew Plaintiff was operating an illegal business while in prison and that she was going to investigate. Defendant Loop also stated that once she found out exactly what Plaintiff was doing, she was going to take all of his money, as

well as his "phone privileges; [his] family; [his] Jpay, and any other privileges that [Plaintiff] may have as a prisoner." Defendant Loop told Plaintiff that she would have him prosecuted to the fullest extent of the law. Finally, Defendant Loop indicated that she would issue Plaintiff as many misconducts as necessary to keep him at OCF because she was not afraid of Plaintiff, stating that she had dealt with "predators" such as Plaintiff in the past, and that she always won. Defendant Loop conveyed these lies regarding Plaintiff to the Michigan State Police, as well as to Defendants Taskila, Yon, Perttu, Olsen, and the MDOC. As a result of Defendant Loop's conduct, Plaintiff was prevented from mailing out pleadings in his pending case in the Eastern District of Michigan, Case No. 4:14-cv-13153.

Plaintiff alleges that after he paid restitution as ordered in the amount of $3,405.00, Defendant Loop refused to assist him in recovering $1,505.00 from prison officials who had embezzled the money from Plaintiff's account. Plaintiff filed a grievance and sought help from Defendant Taskila, who told Plaintiff to contact the Regional Business Office. Plaintiff wrote to Klimala in the Business Office, but did not receive a response. On October 14, 2015, Plaintiff met Defendant Meneguzzo, who stated that the funds had been sent to Plaintiff's daughter Isis Rose Averyette, but that the check was returned as undeliverable by the United States Postal Service. Defendant Meneguzzo told Plaintiff that his money was going to be deposited in the Prisoner Benefit Fund. Defendant LaCount signed off on Plaintiff's grievance regarding this money. Plaintiff sent a kite to Defendant LaCount, who responded, "there is nothing further OCF staff can do so you will need to contact the Jackson Business Office with any further questions."

On April 16, 2015, Plaintiff was issued a Notice of Intent to Conduct an Administrative Hearing (NOI) regarding the removal of funds. According to Plaintiff, the NOI stated:

> Prisoner Jones #412981 received a J-Pay deposit from Isis Rose Averyette on 4/10/2013 for $950.00. A check of the address reported on the money order shows that it is a fictitious address. The telephone number reported is also fictitious. Due to the suspicious nature of this issue, these funds are being returned to the sender.

*See* ECF No. 1, PageID.20.

During the hearing, Plaintiff told prison staff that Isis Averyette was his daughter and that she was mistakenly listed as Isis Jones on his Presentence Investigation Report. Plaintiff claims that Defendants LaCount, Perttu, Loop, Taskila, and Meneguzzo all falsely stated that Isis Averyette was not his daughter and that the address and phone number were fictitious because they are racist, evil minded, and hateful. Plaintiff claims that Defendants Olsen, Yon, Taskila, LaCount, Loop, Perttu, MDOC, and Meneguzzo all acted with the intent to rob Plaintiff of his funds.

On October 22, 2015, after Plaintiff had filed grievance number OCF-2015-10-0624-17a, Plaintiff overheard Defendant Loop tell Defendant Cayer that she was going to write Plaintiff as many misconducts as it took to get him away from her sight. In addition, Defendant Loop admonished Defendant Cayer to "make sure you write [Plaintiff] up for any and everything that he does." Plaintiff filed a grievance regarding this statement.

On November 6, 2015, Defendant Perttu interviewed Plaintiff regarding the grievance. During the interview, Defendant Perttu told Plaintiff that if he did not stop filing grievances on staff, he was going to make it hard for Plaintiff. On November 10, 2015, Defendant Yon signed off on the grievance without giving Plaintiff any assistance. Plaintiff claims that

between August 15, 2015, and December 18, 2015, Defendant Cayer would stand behind Plaintiff while he was preparing legal pleadings and would perform shakedowns on Plaintiff, as well as his legal property and typewriter.  Plaintiff claims that Defendant Cayer stated:

> [Y]ou know the only reason that I'm going through all of your legal papers and shaking down your typewriter is because LOOP, told me to make sure that you're not doing legal work for other prisoners, and that this is in fact your typewriter that you're using, cause you've gotta be working on someone else's legal work and not your own. I'm sorry, but she's (LOOP) my boss and I've gotta do as she says, I'm sure you understand that this isn't personal, its just what I was told to do by the boss.

*See* ECF No. 1, PageID.25.  Plaintiff filed a grievance regarding the shakedowns.

On October 29, 2015, Defendant Perttu called Plaintiff into Defendant Loop's office and threatened Plaintiff with additional misconduct tickets if Plaintiff did not stop filing grievances, and told Plaintiff that it was his last warning.  Defendant Perttu later denied Plaintiff's grievance. On November 3, 2015, Defendant Olsen received Plaintiff's grievance regarding the misconduct of other Defendants.  Subsequently Defendant Loop wrote six misconduct tickets on Plaintiff for destruction and misuse of property and interference with the administration of rules.  Plaintiff was eventually found guilty of each of the misconduct tickets, which resulted in approximately two and a half months loss of privileges.

On November 6, 2015, Plaintiff was interviewed by Captain Dunn and Defendant Yon in their capacity as members of the Security Classification Committee (SCC).  Plaintiff told Defendant Yon that he was terrified of further retaliation by Defendant Loop and requested to be moved to another unit.  Defendant Yon told Plaintiff that he was going to talk with Defendant Loop and that she would not be serving Plaintiff with any more retaliatory misconduct tickets.  However, Defendant Yon failed to take any corrective action and left Plaintiff in the same unit.  Defendant

Yon later told Plaintiff that he should try to stay out of Defendant Loop's way and that maybe she would focus her attention on someone else. Plaintiff states that the next day he was served with a disciplinary ticket written by Law Librarian Kafczynski for being out of place. Plaintiff requested a hearing. On November 13, 2015, Plaintiff received a misconduct ticket written by Law Library Technician Hill. On November 17, 2015, Plaintiff had a hearing on the first out of place ticket and was found not guilty.

On November 19, 2015, Defendant Olsen responded to one of Plaintiff's grievances on Defendant Loop, stating:

> The step I grievance and appeal were reviewed. Grievant claims various issues, but mainly that Loop took his Jpay privileges accusing him of running a business and harrassed [sic] him. Step 1 respondent Perttu noted that Loop served grievant an NOI noting she was investigating this and it appeared he was running a business which would incur sanctions if she found that to be the case. Loop noted that although she had looked into also restricting his (Plaintiff) phone, it was decided to provide grievant the opportunity to demonstrate positive behavior at this time. It does appear grievant is involved in some type of inappropriate business due to various investigations, and Loop was well within her means to look into this and inform grievant what may occur if he continues.

*See* ECF No. 1, PageID.28-29. Plaintiff claims that Defendant Olsen intentionally neglected to take any corrective action.

On November 24, 2015, Plaintiff received a hearing on the second out of place ticket. Lieutenant Buda upheld the ticket, stating that Plaintiff was correct in noting that Library Tech Hill should have submitted a copy of the callout master to the misconduct report, but failed to do so because she was still learning the job. Despite this failure, Lieutenant Hill found Plaintiff guilty because he believed that staff were always more credible than prisoners. Plaintiff filed an appeal, which was denied by Defendant Yon on December 3, 3015. Plaintiff then filed an administrative

appeal to Defendant Russell, which was denied. Plaintiff claims that Defendants violated his federal and state law rights. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

    II.   <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

Plaintiff's claims against Defendants Taskila, LaCount, Klimala, Russell, Olsen, and Yon are based solely on their alleged failure to conduct investigations in response to his grievances and kites, or to otherwise control the behavior of their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Taskila, LaCount, Klimala, Russell, Olsen, and Yon engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff claims that Defendants Loop, Perttu, Meneguzzo, and Cayer all retaliated against him for his use of the grievance system. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him

that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In this case, Plaintiff claims that Defendant Loop issued the NOI after another prisoner logged into Plaintiff's JPay account. Plaintiff alleges that Defendant Loop stated she knew Plaintiff was operating an illegal business while in prison and that she was going to "get to the bottom of it." Defendant Loop also stated that once she found out exactly what Plaintiff was doing, she was going to take all of his money, as well as his "phone privileges; [his] family; [his] Jpay, and any other privileges that [Plaintiff] may have as a prisoner." Defendant Loop told Plaintiff that she would have him prosecuted to the fullest extent of the law. Finally, Defendant Loop indicated that she would issue Plaintiff as many misconducts as necessary to keep him at OCF because she was not afraid of Plaintiff and had dealt with "predators" such as Plaintiff in the past. Plaintiff also claims that Defendant Loop wrote misconduct tickets on him, for which he was found guilty, and that she instructed Defendant Cayer to write Plaintiff up "for everything that he does." Defendant Perttu upheld the NOI and suspended Plaintiff's JPay privileges for 60 days. In addition, Plaintiff admits that an administrative hearing officer subsequently ordered him to pay restitution of $3,405.00 to individuals who had sent him money to assist their loved ones with legal pleadings.

Based on the allegations in Plaintiff's complaint, it appears that Defendant Loop suspected Plaintiff of engaging in illegal activity, and that her suspicions were borne out by the administrative hearing officer who ordered Plaintiff to repay $3,405.00 to individuals who had sent

him money to assist their loved ones with legal pleadings. The statements allegedly made by Defendant Loop to Plaintiff do not support his claim of retaliation, but rather indicate that she was attempting to prevent him from taking advantage of additional individuals who were seeking help for loved ones in prison. With regard to Plaintiff's claim that she wrote retaliatory misconduct tickets on him, Plaintiff concedes that he was found guilty of the misconducts. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). The Court concludes that Plaintiff's retaliation claims against Defendant Loop are properly dismissed.

With regard to Defendant Cayer, Plaintiff claims that between August 15, 2015, and December 18, 2015, Defendant Cayer stood behind Plaintiff while he was preparing legal pleadings and performed shakedowns on Plaintiff, as well as his legal property and typewriter. Plaintiff claims that Defendant Cayer told him that he was doing this because Defendant Loop had instructed him to make sure that Plaintiff was not doing legal work for other prisoners. Defendant Loop's instructions to Defendant Cayer are not surprising given the fact that Plaintiff had apparently been accepting money from the family and friends of other inmates in exchange for performing legal work on their behalf. Plaintiff fails to allege any facts showing that Defendant Cayer's conduct was motivated by a desire to retaliate against him for his use of the grievance procedure. Therefore, Plaintiff's retaliation claim against Defendant Cayer is properly dismissed.

Plaintiff claims that Defendant Perttu told him to stop filing grievances on various occasions and threatened Plaintiff with misconduct tickets. However, Plaintiff does not allege that Defendant Perttu actually wrote any misconduct tickets on him. In *Thaddeus-X*, the Sixth Circuit

recognized that some threats and deprivations are too minimal to constitute adverse action. Citing *Bart v. Telford*, 677 F.2d 622 (7th Cir. 1982), the *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "'trivialize the First Amendment.'" *Thaddeus* 175 F.3d at 398-99 (citing *Bart*, 677 F.2d at 625). Because Plaintiff merely alleges a threat of misconduct on the part of Defendant Perttu, his retaliation claim against Defendant Perttu is properly dismissed.

Finally, with regard to Defendant Meneguzzo, Plaintiff asserts that he was somehow involved in the allegedly improper return of $1,505.00 to Isis Rose Averyette, who Plaintiff claimed was his daughter. Plaintiff's complaint indicates that he received a NOI regarding this issue, which stated that he had received a J-Pay deposit from Isis Rose Averyette on April 10, 2013 for $950.00. Prison officials checked the address and telephone number on the money order, and both were found to be fictitious. Consequently, the funds were returned to the sender. However, the check was returned as undeliverable by the United States Postal Service and Defendant Meneguzzo informed Plaintiff that his money was going to be deposited in the Prisoner Benefit Fund. Plaintiff fails to allege any facts which support his assertion that Defendant Meneguzzo acted improperly, much less that Defendant Meneguzzo was motivated by a desire to retaliate against Plaintiff. Therefore, Plaintiff's retaliation claim against Defendant Meneguzzo is properly dismissed.

Plaintiff claims that Defendants embezzled money from his account in violation of his due process rights. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an

adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479-80 (money wrongly removed from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, the court will dismiss Plaintiff's due process claims.

Plaintiff claims that Defendants placement of $1505.00 into the PBF violated RICO (the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68). The Sixth Circuit

and other federal courts consistently have rejected RICO claims concerning prison conditions. *See, e.g., Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir., Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card); *see also Jenkins v. C.S. C./C.C. C.F. Corr. Services Corp.*, No. 99-1518, 2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, 2006 WL 1646148 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates).

Plaintiffs' conclusory allegations of embezzlement fail to establish predicate acts upon which to base a RICO claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-69 (2009). Indeed, it would appear from the allegations that Defendants' actions in returning the check to Isis Rose Averyette, and subsequently placing the undeliverable returned funds into the PBF were fully disclosed. Plaintiff simply does not like the action taken by prison officials. Accordingly, Plaintiffs' RICO claim will be dismissed.

Plaintiff makes a conclusory assertion that his Eighth Amendment rights were violated. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized

measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Plaintiff's allegations do not rise to the level of Eighth Amendment violation.

Plaintiff also makes a conclusory assertion that his right to free speech has been violated by prison officials. However, Plaintiff fails to allege any specific facts which would support such a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-69; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, Plaintiff's free speech claim is properly dismissed.

Finally, the Court notes that Plaintiff is asserting several violations of state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.

1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983. Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over state-law claims, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

Finally, the Court notes that Plaintiff's pending motions (ECF Nos. 9, 17, 19, 32, and 39) are DENIED as moot.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: July 13, 2016                          /s/ Robert Holmes Bell
                                              ROBERT HOLMES BELL
                                              UNITED STATES DISTRICT JUDGE